OPINION
{¶ 1} Appellants Luther Daywalt and Patricia Daywalt separately appeal from the July 3, 2002, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, terminating appellants' parental rights and granting permanent custody of the minor child to the Stark County Department of Job and Family Services.
 {¶ 2} This case comes to us on the accelerated calender. App.R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 3} "(E) Determination and judgment on appeal. The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 4} This appeal shall be considered in accordance with the aforementioned rule.
 STATEMENT OF THE FACTS AND CASE {¶ 5} On October 27, 2000, the Stark County Department of Job and Family Services filed a complaint alleging the minor child, Gene Daywalt (D.O.B. 10-26-00) was dependent and seeking permanent custody based on the parents' demonstrated inability to provide adequate parental care for their six previously born children.
 {¶ 6} At an Emergency Shelter care hearing held on October 30, 2000, based upon a stipulation of probable cause by both mother and father, the child was found to be dependent and temporary custody was granted to SCDJFS.
 {¶ 7} On November 27, 2000, the SCDJFS filed an initial case plan which indicated a permanent plan for the child and no services for the parents.
 {¶ 8} On January 10, 2001, the parties stipulated that the minor child was a Dependent Child. The Agency withdrew its request for permanent custody and consented to the court issuing an order of temporary custody to the Agency. The trial court ordered a case plan be developed to include services for the family.
 {¶ 9} On January 19, 2001, such case plan was filed. Said case plan identified concerns of domestic violence between mother and father as well concerns as to lack of adequate parenting skills. Appellant-mother was to successfully attend and complete RENEW. Both Appellant-mother and Appellant-father were to attend and successfully complete Goodwill parenting Program. It was also recommended that Appellant-father attend anger management through Melymbrosia.
 {¶ 10} On April 18, 2001, the trial court held a semi-annual review of the matter, wherein the trial court maintained the temporary custody of the child with the Agency.
 {¶ 11} On September 26, 2001, the trial court held an annual review of this matter and again maintained the temporary custody of the child with the Agency. The trial court found that the Agency had made reasonable efforts to finalize the permanency plan. The trial court did not find compelling reasons to preclude a filing for permanent custody.
 {¶ 12} On September 27, 2001, the Agency filed its second Motion for Permanent Custody.
 {¶ 13} On February 5, 2002, a hearing was held on the Agency's second Motion for Permanent Custody. At said hearing the Agency again withdrew its request based upon the parents' agreements to consent to an order of temporary custody with the Agency through April 27, 2002.
 {¶ 14} On March 22, 2002, the trial court held a second semi-annual review of the matter. Neither parent appeared at this hearing but counsel for each was present. The trial court again found that the Agency had made reasonable efforts to finalize the permanency plan. The trial court did not find compelling reasons to preclude a filing for permanent custody and specifically ordered the Agency to file for permanent custody of the child.
 {¶ 15} On March 27, 2002, the SCDJFS filed its third Motion for Permanent Custody.
 {¶ 16} On June 11, 2002, a permanent custody trial was conducted as to the interests of the child.
 {¶ 17} On July 3, 2002, the trial court terminated the parental rights of Luther Daywalt and Patricia Daywalt and granted permanent custody of the minor children to SCDJFS.
 {¶ 18} It is from this decision which both Luther Daywalt and Patricia Daywalt have filed separate appeals, assigning the following errors:
ASSIGNMENTS OF ERROR
APPELLANT FATHER-LUTHER DAYWALT
I.
 {¶ 19} "APPELLANT WAS PREJUDICIALLY DEPRIVED OF HIS UNITED STATES AND OHIO CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL."
II.
 {¶ 20} "THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW WHEN IT FAILED TO GRANT CUSTODY OF THE MINOR CHILD TO HIS PATERNAL GREAT UNCLE."
 {¶ 21} III.
 {¶ 22} "THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
IV.
 {¶ 23} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
APPELLANT MOTHER — PATRICIA DAYWALT
I.
 {¶ 24} "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AS TO LAW WHEN IT FAILED TO RECOGNIZE THAT THE CHILD COULD BE RETURNED TO APPELLANT WITHIN A REASONABLE TIME."
II.
 {¶ 25} "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED A REVERSIBLE ERROR AS TO LAW WHEN IT FAILED TO RECOGNIZE THAT APPELLANT/MOTHER HAD SUBSTANTIALLY COMPLETED HER CASEPLAN [SIC]."
 {¶ 26} III.
 {¶ 27} "THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED THE STARK COUNTY DEPARTMENT OF JOB 
FAMILY SERVICES' MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THE EVIDENCE DID NOT REACH THE LEVEL OF CLEAR AND CONVINCING AND THE DECISION WAS NOT IN THE BEST INTERESTS OF THE CHILD."
 Appellant Father-Luther Daywalt I. {¶ 28} Appellant-Father argues that he was deprived of his right to effective assistance of counsel. More specifically, Appellant alleges that his counsel was ineffective by failing to issue certain subpoenas and also failed to file a motion seeking to change legal custody of the child to the child's paternal great uncle. We disagree.
 {¶ 29} The standard of review of an ineffective assistance of counsel claim is well-established. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064. In order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d at 136.
 {¶ 30} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Id. at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 31} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 32} Appellant-father claims trial counsel failed to subpoena witnesses who would testify that he had attended the Goodwill Parenting Program and Melymbrosia and had made improvement in those areas. Appellant-father also alleges ineffectiveness in counsel failing to file a motion for change of legal custody to the paternal great-uncle.
 {¶ 33} With regard to the failure to issue subpoenas for the instructors of the Goodwill Parenting Program and Melymbrosia, those instructors could have only testified to the fact that Appellant had attended those programs. The guardian ad litem acknowledged that Appellant had made improvement. (T. at 37-39). Appellant himself testified that he only attended four or five sessions with Melymbrosia and that he had not gotten much out of same. (T. at 119). Appellant was required by his case plan to successfully complete these programs. Appellant did not do so. Appellant has failed to meet his burden showing that any such testimony that may have been presented through these witnesses would have changed the outcome of the trial.
 {¶ 34} Appellant-father's is also unable to satisfy the second prong of Strickland with respect to his assertion that his trial counsel was ineffective for failing to file a motion for change of custody to the paternal great-uncle. The trial court allowed the paternal great-uncle, Lee Ditch, to testify at trial regarding his interest in obtaining custody of the minor child. (T. at 89-111). We therefore find that Appellant-father cannot show that the result of the trial would have been different if his counsel had in fact filed a motion for change of custody to Mr. Ditch.
 {¶ 35} Appellant-Father's first assignment of error is overruled.
 II. {¶ 36} Appellant, in his second assignment of error, contends that the trial court erred as a matter of law when it failed to grant custody of the minor child to his paternal great uncle. We disagree.
 {¶ 37} R.C. § 2151.412(G) provides:
 {¶ 38} "In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 {¶ 39} "* * *
 {¶ 40} "(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;
 {¶ 41} "* * *
 {¶ 42} "(5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency;" (Emphasis added).
 {¶ 43} "The language of R.C. § 2151.412(G) is precatory rather than mandatory." In Re: Rollinson
(April 27, 1998), Stark App. Nos. 97-CA-00243, -206, unreported.
 {¶ 44} "Consequently, this statute does not require the trial court to act in a specific manner, but rather suggests criteria to be considered in making its decision regarding case plan goals." Id.
 {¶ 45} Appellant-father maintains that the child's paternal great-uncle is a suitable member of his extended family, and therefore, should have been granted custody. The evidence presented established that the paternal great-uncle was considered with regard to placement. However, Mr. Ditch informed the Agency of his concerns with respect to the child's medical problems and requested further information on such. The Agency provided said information to Mr. Ditch with a request the inform them of his intent no later than January 23, 2002, based on the upcoming permanent custody trial. The only response received by the Agency from Mr. Ditch was a note written on the back of their letter stating that he would provide the Agency with an answer within two weeks.
 {¶ 46} Furthermore, Mr. Ditch testified that he already cares for two children with special needs, in addition to two other children who reside in his home. (T. at 90-91, 95, 98). (Three of the four children in Mr, Ditch's home are siblings of the subject minor child). Additionally, Mr. Ditch testified that he believes that Appellant is a good parent (T. at 104) and that he allows appellant contact with his other minor children and has recently allowed Appellant to take them out for the day. (T. at 92, 93, 96).
 {¶ 47} Based upon the foregoing and the entire record, we find the trial court did not abuse its discretion in not granting custody to the child's paternal great-uncle.
 {¶ 48} Appellant-father's second assignment of error is, therefore, overruled.
 III, IV. {¶ 49} Because Appellant-father's third and fourth assignments of error are interrelated, we shall address said assignments of error together. In his third assignment of error, father argues the trial court's finding that the child could not or should not be placed with Appellant-father within a reasonable time was against the manifest weight and sufficiency of the evidence. In his fourth assignment of error, Appellant-father submits the trial court's finding the best interest of his child would be served by granting permanent custody to the department was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 50} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
 {¶ 51} The relevant statute is R.C. § 2151.414, which provides, in pertinent part:
 {¶ 52} "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 53} "(a) The child is not abandoned or orphaned * * *, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 54} "* * *
 {¶ 55} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 56} In determining the best interest of a child, R.C. §2151.414(D) states:
 {¶ 57} "(D) * * * the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 58} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 59} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 60} "(3) The custodial history of the child * * *;
 {¶ 61} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
 {¶ 62} Upon review of the record, we find the trial court's finding it was in the child's best interest to grant permanent custody to the department is not against the manifest weight of the evidence. The trial court found, pursuant to R.C. § 2151.414(B), Gene could not be placed with Appellant-father within a reasonable time or should not be placed with Appellant-father. However, a best interest determination, standing alone, is not sufficient to grant permanent custody of a child to an agency and divest parents of their parental rights. R.C. §2151.414(E) states:
 {¶ 63} "In determining at a hearing held pursuant to division (A) of this section . . . whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with the parent
 {¶ 64} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 65} "(2) Chronic mental illness, chronic emotional illness, * * * of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *
 {¶ 66} "(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 {¶ 67} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 68} "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 {¶ 69} "* * *
 {¶ 70} "(10) The parent has abandoned the child.
 {¶ 71} "* * *
 {¶ 72} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 73} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 74} "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 75} "(16) Any other factor the court considers relevant."
 {¶ 76} The trial court found that Appellant-father failed to complete his case plan objectives.
 {¶ 77} Additionally, the trial court found that Gene had been in the temporary custody of the department for 12 or more months of a consecutive 22 month period. As such, the trial court was not required to find that Gene could not or should not be placed with Appellant-father within a reasonable time. In re: Woodall (June 13, 2001), Summit App. No. CA20346, unreported. In light of the foregoing and based upon the entire record in this matter, we find the trial court did not abuse its discretion in granting permanent custody of Gene to the Agency.
 {¶ 78} Appellant-Father's third and fourth assignments of error are overruled.
 {¶ 79} Appellant Mother — Patricia Daywalt I., II. {¶ 80} In her first and second assignments of error, Appellant mother argues that she substantially completed her case plan and that the trial court erred failing to recognize same and further erred in finding that the minor child could not or should not be returned to her within a reasonable time.
 {¶ 81} As stated supra, the trial court found that Gene had been in the temporary custody of the department for 12 or more months of a consecutive 22 month period. As such, the trial court was not required to find that Gene could not or should not be placed with Appellant-mother within a reasonable time. In re: Woodall (June 13, 2001), Summit App. No. CA20346, unreported. In light of the foregoing and based upon the entire record in this matter, we find the trial court did not abuse its discretion in granting permanent custody of Gene to the Agency.
 {¶ 82} Appellant-Mother's first and second assignments of error are overruled.
 III. {¶ 83} Base on our disposition of Appellant-Father's Assignments of Error III and IV, supra, we find Appellant-Mother's Third Assignment of Error not well-taken and hereby overrule same.
 {¶ 84} Appellant's Third Assignment of Error is denied.
 {¶ 85} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: Boggins, J., Farmer, P.J. and Wise, J. concur.
Topic: Permanent Custody